## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

Case No. 09-80797-CIV-ZLOCH/ROSENBAUM

FIRST JACKSON CAPITAL &
MANAGEMENT, LLC, a Nevada limited
liability company,
as successor in interest to
FIRST JACKSON INVESTMENT, LLC,
a Delaware limited liability company,

       Plaintiff,

v.

FALCONE GROUP, LLC, a Florida
limited liability company,
FALCON FUNDING, LLC, a Florida
limited liability company, and
ARTHUR FALCONE, individually,

       Defendants.

_____/

## REPORT AND RECOMMENDATION

    This matter is before the Court upon Defendant Arthur Falcone's Motion to Dismiss Second Amended Complaint [D.E. 31, 32, 33] pursuant to an Order of Referral [D.E. 45] entered by the Honorable William J. Zloch, United States District Judge, for a report and recommendation. Upon consideration of the Motion, the Complaint, and the entire record, and being otherwise duly advised in the premises, I recommend that Defendant's Motion be denied.

### I. Background

    On May 27, 2009, Plaintiff First Jackson Capital & Management, LLC, ("First Jackson

Capital" or "Plaintiff"), as a successor in interest to First Jackson Investments, LLC ("First Jackson Investments"), filed its Original Complaint in this Court against Defendants Falcone Group, LLC ("Group"), Falcon Funding, LLC ("Funding") and Arthur J. Falcone ("Falcone").  D.E. 1.  On December 9, 2009, Plaintiff filed its Second Amended Complaint containing five counts brought pursuant to diversity jurisdiction.  *See* D.E. 29.  The Second Amended Complaint alleges claims of breach of the promissory note (Count I) and breach of the guarantee (Count II), or in the alternative, fraud in the inducement (Count III), promissory estoppel (Count IV), and reformation of the guarantee (Count VI),[1] under Florida law.  D.E. 29.

According to the Complaint, in November, 2006, Defendant Arthur Falcone conferred with Murray Rosenthal, a trustee of the Rosenthal Living Trust, which is the managing member of First Jackson Investments, regarding the procurement of a $2 million loan from First Jackson Investments. *See* D.E. 29, ¶¶ 1-27.  The Complaint alleges that Defendant Falcone assured Mr. Rosenthal that he would personally guarantee the loan.  *Id.*  Further, the Complaint asserts that based on the representations of Defendant Falcone, on or about December 15, 2006, First Jackson Investments loaned $2 million and delivered the money by wire transfer to the company, Defendant Funding.  *Id.* As substantiation of this claim, the Complaint attaches a receipt for a wire transfer for $2 million sent on December 15, 2005, from First Jackson Investments to "Falcon Funding, LLC."  *See* D.E. 29-1.

Thereafter, the Complaint represents, on or about December 18, 2006, Defendant Group

---

[1]The Second Amended Complaint identifies the claim for reformation of the Guarantee as "Count VI," but the pleading contains no Count V.  *See* D.E. 29.  Nevertheless, the parties refer to the claim for reformation as "Count V" in their briefs.  In the interest of clarity, the Court will adopt the terminology of the parties in their briefs and similarly refer to the reformation claim as "Count V," despite the labeling of it in the Second Amended Complaint as "Count VI."

executed and delivered a promissory note (the "Note") to First Jackson Investments, whereby Group

agreed to repay the $2 million loan, plus interest.   *See* D.E. 29, ¶¶ 21-22.   Attached to the Second

Amended Complaint is a copy of the applicable Note.   *See* D.E. 29-2 at 2.   As relevant to this Motion

to Dismiss, the relevant parts of the Note read,

> FOR VALUE RECEIVED, the undersigned promises to pay to the order of First Jackson Investments, LLC . . .("Holder"), the principal sum of Two million Dollars ($2,000,000.00) together with interest . . . .
>
> . . . .
>
> Maker waives demand, protest and notice if maturity, non-payment or protest and all requirements to hold Maker liable hereunder.
>
> Maker further agrees . . . .
>
> If the principal of or any interest on this Note or other sums due hereunder shall not be paid punctually when due, after thirty (30) days written notice from Holder to Maker, the entire amount of unpaid principal and accrued interest and other sums due hereunder shall at once become due and payable.
>
> . . . .
>
> This Note is to be construed and enforced according to the laws of the State of Florida.
>
> This Note may not be amended or modified . . ., except by an instrument in writing executed by Maker and Holder.
>
> Falcone Group, LLC
> [Handwritten] Arthur Falcone [handwritten] CEO
> Arthur J. Falcone, CEO
> 1951 NW 19th Street, Suite 200
> Boca Raton, Florida 33431

D.E. 29-2 at 2.

Additionally, contemporaneous with the delivery of the Note, Defendants Funding and

Arthur Falcone "jointly and severally" executed a guarantee of the Note, the Second Amended

Complaint alleges, and, thus, are liable for the First Jackson Investments loan amount pursuant to

the terms of the guarantee (the "Guarantee"). *See* D.E. 29, ¶ 23.  The Complaint attaches a copy of

the Guarantee dated December 18, 2006.  *See* D.E. 29-3.  The relevant terms of the Guarantee read,

> In consideration for First Jackson Investments, LLC . . . ("Lender"), extending a loan in the amount of Two Million Dollars . . . ($2,000,000.00) to Falcon Funding, LLC ("Borrower"), which loan is evidenced by a Promissory Note ("Note") of even date herewith from Borrower to Lender, the undersigned ("Guarantors") hereby jointly and severally guarantee payment of all amounts due and owing in connection with the Note (collectively, the "Obligations").

> Guarantors' obligations hereunder are independent of the Obligations of Borrower to Lender.  A separate action or actions may be brought and prosecuted against Guarantors whether action is brought against Borrower or whether Borrower be joined in any such action.

> Guarantors agree that whenever an attorney is used to seek payment under or otherwise enforce this Guarantee or to enforce, declare or adjudicate any right or obligations under this Guarantee, whether by legal proceedings or by other means, all such reasonable attorneys' fees shall be payable on demand by Guarantors.

> Guarantors acknowledge that (I) they have received value for and are benefitted by this Guarantee; (ii) they have a direct monetary interest in Borrower; (iii) both the Borrower and each of them are solvent . . .; and (iv) they have executed this Guarantee in order to induce Lender to make the loan to Borrower heretofore described. This Guarantee shall, without further reference of assignment, pass to, and may be relied upon and enforced by, any successor or participant or assignee of Lender in connection with any Obligations of Borrower and/or Guarantors to Lender.

> This Guarantee shall be governed by and construed in accordance with the laws of the State of Florida.

> This Guarantee shall be binding upon Guarantors and their successors and assigns.

4

. . . .

The Guarantors agree that, as between the Guarantors and Lender, the liabilities may be cleared to be due and payable for purposes of the Guarantee notwithstanding any say, injunction or other prohibition which may prevent, delay or vitiate any such declaration as against the Borrower and that, in the event of any such declaration . . . such Obligations (whether or not due and payable by the Borrower) shall forthwith become due and payable by the Guarantors for purposes of this Guarantee.  Guarantors hereby waive any requirement that Lender exhaust any right, power or remedy or proceed against the Borrower under the Note . . . .

. . . .

This Guarantee shall be a continuing to guarantee, and any other guarantor, and any other party liable upon or in respect of any obligation hereby guaranteed may be released without affecting the liability of the Guarantors individually or collectively.  The liability or each Guarantor hereunder shall be joint and several with the liability of any other guarantor or other party upon or in respect of the Obligations.

IN WITNESS WHEREOF, the undersigned has executed and delivered this Guarantee this 18th of December, 2006.

Falcon Funding, LLC
[Handwritten signature] Arthur Falcone
Arthur J. Falcone, Managing Member
1951 NW 19th Street, Suite 200
Boca Raton, Florida 33431

D.E. 29-3 at 2-3.

As set forth in the Second Amended Complaint, Defendant Funding is a division of Defendant Group, and Defendant Arthur Falcone is a member of both Defendants Group and Funding. D.E. 29, ¶¶ 6-12. The Second Amended Complaint alleges that Defendants Group, Funding, and Arthur Falcone have failed to pay the last interest payment and principal of the Note.

*Id.*, ¶¶ 25-26. In the Second Amended Complaint, Plaintiff contends that it is the owner and holder of the Note and Guarantee by virtue of an assignment of assets executed on March 15, 2009. *Id.*, ¶ 24. As relief for Defendants' failure to pay interest and principal of the Note and Guarantee, the Complaint states that Plaintiff seeks a judgment against Defendants for compensatory damages, plus interests, court costs, attorneys' fees, and such other relief the Court deems proper, as asserted in Counts I-V. *Id.* at 4-9.

Defendant Arthur Falcone filed the pending Motion to Dismiss the Second Amended Complaint on December 21, 2009. D.E. 31, 32, 33. In his Motion, Defendant Falcone requests that the Court dismiss the claims for breach of the guarantee (Count II), fraud in inducement (Count III), promissory estoppel (Count IV), and reformation, against him individually for failure to state a claim. *Id.*

On December 29, 2009, Plaintiff filed an Opposition to Defendant Falcone's Motion to dismiss. D.E. 35. Falcone filed his Reply on January 15, 2010. D.E. 42.

Judge Zloch referred this Motion to me for report and recommendation on January 20, 2010. D.E. 45. This Motion is now ripe for review and recommendation.

## *II. Analysis*

A district court reviews a motion for dismissal for failure to state a claim, pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii), under the same standards that govern Rule 12(b)(6), Fed. R. Civ. P., dismissals. *See Mitchell v. Farcass*, 112 F.3d 1483, 1490 (11th Cir.1997). Rule 12(b)(6) provides, in relevant part,

> **(b)** How to Present Defenses. Every defense to a claim for relief in any pleading must be asserted in the responsive pleading if one is required. But a party may assert the following defenses by motion:
> . . .

6

**(6)** failure to state a claim upon which relief can be granted;

. . . .

*Id.* The Court, therefore, considers the Federal Rules of Civil Procedure as they set forth the requirements for stating a claim.

Rule 8(a)(2), Fed. R. Civ. P., demands that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). While a complaint need not provide detailed factual allegations, the standard "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Wilcombie v. Teevee Toons, Inc.*, 555 F.3d 949, 958 (11th Cir. 2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)); *see also Corbitt v. Home Depot U.S.A., Inc.*, 573 F.3d 1223, 1256 (11th Cir. July 10, 2009); *Cobb v. State of Florida*, 293 F. App'x 708, 709, 2008 WL 4165223, *1 (11th Cir. Sept. 11, 2008);[2] *Watts v. Florida Int'l Univ.*, 495 F.3d 1289, 1295 (11th Cir. 2007). As the Supreme Court has explained, the complaint's "factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. "Moreover, the facts supporting the claim must be 'consistent with the allegations in the complaint.'" *Wilcombie*, 555 F.3d at 958 (quoting *Twombly*, 550 U.S. at 562). The Court reviews a complaint for failure to state a claim by accepting all allegations in the complaint as true and construing the facts in a light most favorable to the plaintiff. *Hughes v. Lott*, 350 F.3d 1157, 1159-60 (11th Cir. 2003) (internal citation omitted); *see also Cobb*, 293 F. App'x at 709, 2008 WL 4165223 at *1; *Brown v. Budget Rent-A-Car Systems, Inc.*, 119 F.3d 922, 923 (11th Cir. 1997).

---

[2]The Eleventh Circuit did not elect to publish this decision. Consequently, under Rule 36-2, 11th Cir., the opinion does not constitute binding authority. Nevertheless, it may be cited as persuasive authority. *See* 11th Cir. R. 36-2.

## Count II - Breach of the Guarantee

In his Motion to Dismiss, Defendant Falcone argues that the Complaint fails to state a claim for breach of guarantee against him individually, and thus, should be dismissed.  D.E. 31, 33, 32, at 4-6.  Defendant Falcone contends that he signed the Guarantee at issue as an officer of Defendant Funding, and not in his individual capacity, and thus, he cannot be held personally liable for any alleged breach of the Guarantee. *Id.*

In support of his argument, Defendant Falcone asserts that case law provides for a presumption that where an agent signs a contract for a disclosed principal, the agent does not intend to make himself a party to the instrument itself.  *Id.* (citing to *Nishimatsu Construction Co., Ltd. v. Houston National Bank*, 515 F.2d 1200, 1207 (5th Cir. 1975)[3]).  Furthermore, Defendant Falcone contends that case law establishes that "[i]f there is no indication as to the parties before the signature, the agent's name either before or after the principal's name as 'Agent of P' or "Agent for P' or 'P by A' . . . indicates that the principal is and the agent is not a party." *Id.* (quoting *Nishimatsu* at 1207).  Falcone further urges that where a contract uses "boilerplate and neutral language" to identify the parties, such language is insufficient to indicate who the intended parties are of the contract.  *Id.* (citing to *Nishimatsu*).

Turning to the Guarantee at issue in this case, Falcone argues that based on these standards, Falcone did not sign the Guarantee in his personal capacity.  *Id.*  In this regard, Falcone asserts that the language of the Guarantee fails to define the purported "Guarantors," or the parties to be held liable for the purported loan.  Furthermore, Defendant Falcone contends that the Guarantee includes

---

[3]Pursuant to *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981), opinions of the Fifth Circuit issued prior to October 1, 1981, are binding precedent in the Eleventh Circuit.

no indication that the parties intended Falcone to be individually bound by its terms.  Moreover,

Defendant Falcone describes the prefatory paragraph of the Guarantee, which states "the undersigned

("Guarantors") hereby jointly and severally guarantee payment of all amounts due and owing in

connection with the Note . . ." [*see* D.E. 29-3 at 2], as "boilerplate and neutral," and thus, insufficient

to indicate that Falcone was an intended party of the Guarantee.  *Id.* (citing to *Nishimatsu*).

Defendant Falcone also contends that the signature block of the Guarantee reveals the

"Guarantors" of the Guarantee as "Falcon Funding, LLC" alone, and not himself, individually.  *Id.*

Turning to the Guarantee's signature block itself, which reads,

> Falcon Funding, LLC
> [Handwritten signature of Arthur Falcone]
> Arthur J. Falcone, Managing Member
> 1951 NW 19th Street, Suite 20
> Boca Raton, FL 33431

[*see* D.E. 29-3 at 3], Falcone claims that  he signed the Guarantee under the name "Falcon Funding,

LLC," and that *below* his handwritten signature, he identified himself by his name, followed by his

title as an officer of "Falcon Funding, LLC," as "Managing Member."  According to Defendant

Falcone, because he signed his name in the signature block followed by his identification as an

officer of the principal, Funding, he signed only as an agent of Funding.  *Id.*

In support of his argument, Falcone relies on *Nishimatsu*, 515 F.2d 1200, which he describes

as standing for the proposition that no personal liability attaches for an agent where that agent's

signature on the credit application and agreement at issue indicated his agency status and no

language suggested that the agent intended to be personally liable.  *See* D.E. 31 (citing *Nishimatsu*).

Because Falcone's signature denotes that he signed as an agent of Funding and the language of the

Guarantee reflects no indication of Falcone's intention to be personally liable for the loan, Falcone

concludes that *Nishimatsu* directs that Defendant Falcone signed the Guarantee as an agent of Funding, and not in his individual capacity. *Id.*

Moreover, Falcone posits that the Second Amended Complaint's allegations that Defendant Falcone orally represented to Plaintiff prior to the lending of the loan at issue that he would personally guarantee the loan do not bear on whether Falcone signed the Guarantee in his personal capacity. *Id.* In support of this contention, Falcone asserts that as the Guarantee was attached to the Second Amended Complaint, the terms of the Guarantee are incorporated into the Second Amended Complaint and should be given great weight. According to Falcone, the terms of the Guarantee directly negate any indication of Falcone's personal guarantee. As a result, Falcone argues, the Guarantee contradicts the Complaint's assertions that Falcone agreed to be personally liable for the Guarantee, and Plaintiff has no grounds for relief under Count II. *Id.* Thus, Falcone argues, the claim against Defendant Falcone for breach of the guarantee should be dismissed. *Id.*

This Court disagrees with Defendant Falcone. After consideration of the parties' arguments and case law and taking the allegations of the Second Amended Complaint as true, the Court finds that the Second Amended Complaint states a claim for breach of the guarantee against Defendant Falcone in his individual capacity. The issue before the Court is whether the Guarantee may fairly be construed as providing Plaintiff recourse to proceed against Falcone individually as a guarantor. Under Florida case law, which is controlling here pursuant to the terms of the Guarantee itself, the answer to that question must be "yes," as the combination of the language of the Guarantee and the characteristics of Defendant Falcone's signature makes the Guarantee ambiguous on its face, and thus, sufficient to withstand a motion to dismiss.

In addressing this issue, the Court first notes that the pleading attaches a copy of the

10

Guarantee as Exhibit C to the Second Amended Complaint.  *See* D.E. 29-3.  Under Rule 10©, Fed.

R. Civ. P., "A copy of a written instrument that is an exhibit to a pleading is a part of the pleading

for all purposes."  Moreover, by its language, the Second Amended Complaint expressly makes

Exhibit C a part of the Second Amended Complaint.  D.E. 29 at ¶ 23.  Thus, the Court considers the

contents of Exhibit C, referenced in Paragraph 23 of the Second Amended Complaint, to constitute

a part of the allegations for purposes of determining the Motion to Dismiss.

According to Florida case law, where, as here, the Uniform Commercial Code is not

applicable,[4] the general rule for analysis provides as follows:

> A signature preceded by the word 'by' and accompanied by *descriptio personae*, that is, language identifying the person signing the document as a corporate officer or something similar, does not create personal liability for the person signing a contract to which he or she is not a specified party, unless the contract contains language indicating personal liability or the assumption of personal obligations.

---

[4]Section 673.1041, Fla. Stat., requires that for the Uniform Commercial Code to be applicable, a negotiable instrument must satisfy the following description:

> [An]  unconditional promise or order to pay a fixed amount of money, with or without interest or other charges described in the promise or order if it:
>
> (a) Is payable to bearer or to order at the time it is issued or first comes into possession of a holder;
>
> (b) Is payable on demand or at a definite time; and
>
> (c) Does not state any other undertaking or instruction by the person promising or ordering payment to do any act in addition to the payment of money, but the promise or order . . . .

Here, the Guarantee at issue is not payable upon demand or at a definite time, and thus, it is not a negotiable instrument.  Thus, the Court looks not to the UCC, but to Florida case law for appropriate analysis.

11

*Fairway Mortgage Solutions, Inc. v. Locust Gardens*, 988 So. 2d 678, 681 (Fla. 4th DCA 2008)

(quoting *Robert C. Malt & Co. v. Carpet World Distrs., Inc.*, 763 So. 2d 508, 510 (Fla. 4th DCA

2000)); *Manufacturers' Leasing, Ltd. v. Florida Dev. & Attractions, Inc.*, 330 So. 2d 171 (Fla. 4th

DCA 1966) (citing to *Falston Realty Co. v. Kirksey*, 137 So. 267, 269-70 (Fla. 1931)).[5]  "Florida

courts have consistently adhered to the general rule that an individual who executes a guarantee as

officer of a corporation by inserting his or her corporate title after their name on the document cannot

defeat the purpose of the guarantee when, by its terms, the document contains provisions for

individual liability.  *Lab. Corp. of America v. McKown*, 829 So. 2d 311, 313-14 (Fla. 5th DCA 2002)

(citing *Robert C. Malt & Co.*, 763 so. 2d at 510).  Thus, the Court must look to both the signature

block of the Guarantee and the language of the Guarantee itself to determine whether, as a matter

of law, Defendant Falcone could be held personally liable, if the facts alleged in the Complaint were

taken as true.

    The Court starts with the signature block of the Guarantee, set forth below:

> Falcon Funding, LLC
> [Handwritten signature of Arthur Falcone]
> Arthur J. Falcone, Managing Member
> 1951 NW 19th Street, Suite 200
> Boca Raton, Florida 33431

D.E. 29-3 at 3.  Here, Defendant Falcone's signature appears after the title of the company, Falcon

Funding LLC, but is not preceded by the word "by."  Although the failure to include the word "by"

---

[5]  The Court notes that Defendant Falcone relies on the Fifth Circuit case, *Nishimatsu Construction Co., Ltd. v. Houston National Bank*, 515 F.2d 1200, 1207 (5th Cir. 1975), as controlling rule regarding the analysis of whether an agent is personally liable when he signs an agreement. While the Court acknowledges that this Fifth Circuit case is binding, the Court notes that the holding in *Nishimatsu* was based on Texas agency law, and not Florida case law.  As the controlling law in this case is Florida law, the Court looks to Florida cases for consideration of appropriate application of these issues.

before Falcone's signature does not appear to satisfy the general rule to establish Falcone's signature in his agent capacity only, nor does it preclude the possibility that an agent signed the instrument in his representative capacity. *See Plotch v. Gregory*, 463 So. 2d 432, 435 (Fla. 4th DCA 1985). Similarly, the inclusion of Falcone's corporate officer title below his name and not after his signature in handwriting could qualify as *descriptio personae,* but need not necessarily limit liability to the corporation. *See Roy v. Davidson Equipment, Inc.*, 423 So. 2d 496, 496-97 (Fla. 4th DCA. 1982) (where officer signed a guaranty agreement with his name and title, preceded by the corporation name and the word "by," court determined that signature alone without more, would be "classic example of corporate officer signing in representative capacity," but ultimately found the agent personally liable for other reasons).

The Court, therefore, turns to the language of the Guarantee itself. The Guarantee language in this case includes the plural terms "Guarantors," "they," "their," and "each of them," consistently throughout the Guarantee, and thus, appears to provide multiple manifestations that the drafters of the Guarantee intended that more than one guarantor exist. Furthermore, the use of the term "joint and several" also further supports the conclusion that the drafters intended for more than one guarantor to be bound by the Guarantee. Under these circumstances, finding that the parties did not intend for Defendant Falcone to have served as a guarantor might require the ignoring of these terms within the Guarantee, unless Defendant Falcone can demonstrate that the parties contemplated another guarantor other than Defendant Funding. Florida case law, however, holds that courts are not free to ignore contractual language; rather, "the legal effect of [a contract's] provisions should be determined from the words of the entire contract." *See Sugar Cane Growers Cooperative of Fla., Inc. v. Pinnock*, 735 So. 2d 530, 535 (Fla. 4th DCA 1999) (rejecting trial court's interpretation of

guarantee for failure to consider words of the guaranty and not giving effect to the full contract language).

These facts take on even more significance when considered against the background here, where Defendant drafted the Guarantee and provided it to Plaintiff, according to the Complaint. Under Florida law, an ambiguous term or provision in a contract is to be construed against the drafter. *City of Homestead v. Johnson*, 760 So. 2d 80, 84 (Fla. 2000) (upholding lower court's interpretation of the contract in relation to other terms and provisions contained in agreement); *LEA Industries, Inc. v. Raelyn Int'l, Inc.*, 363 So. 2d 49, 53 (Fla. 3d DCA 1978) ("the contract of guarantee was submitted by defendants on a form prepared by them . . . . [and, as such] the guarantee is to be construed against the guarantor.") (internal citation omitted).

The Court also compares Defendant Falcone's signature on the Note, where he signed his name, immediately followed by his title – a classic indication of signing in a representative capacity – with Defendant Falcone's signature on the Guarantee, where he did not add his title after his signature, even though both signatures were supposed to have been signed in representative capacity only, according to Defendant Falcone.  The difference in signature formats begs the question, "Why?"  Moreover, if, as Defendant Falcone suggests, the parties did not intend for Defendant Falcone to serve as a guarantor of the Guarantee, under the contract, Defendant Funding would be essentially guaranteeing its own debt, as it directly received the loan money from Plaintiff according to the wire transfer.  These factors weigh in favor of a finding that the parties intended to hold more than one guarantor liable and include Defendant Falcone in his personal capacity through his signature on the Guarantee.

Other factors, however, preclude a conclusive finding that Defendant Falcone is, as a matter

of law, personally liable under the Guarantee.  In this regard, even though Defendant Funding received the loan, Defendant Group signed the Note obligating repayment of the loan to Plaintiff. Thus, it appears that Defendant Group is liable for the debt, and the Guarantee could be construed as providing for Defendant Funding to guarantee the debt now owed by Defendant Group to Plaintiff.  Further, the Guarantee does not specifically identify the Guarantors, nor refer to Falcone in his individual capacity.  And the Guarantee fails to contain any specific language that would unambiguously bind Defendant Falcone or otherwise impose an obligation on Falcone personally.

The Court further notes that unlike the instant matter, the cases cited by Plaintiff for the proposition that an agent could be held personally liable by his signature to an instrument, including *Roy* and *Malt*, were based on instruments that included language where the agent directly agreed to be personally liable, and the instruments specifically negated the possibility that the agent's signature could have been in a purely representative capacity.  *See Great Lakes Products, Inc.*, 878 So. 2d at 419-20; *Malt*, 763 So. 2d at 510-11; *Roy*, 423 So. 2d at 497; *Manufacturers' Leasing, Ltd.*, 330 So. 2d at 172.

Nonetheless, Florida case law also directs that where, as here, uncertainty exists as to whether the instrument was intended to bind the signing person in an individual or representative capacity, the instrument is ambiguous on its face, and a motion to dismiss should be denied.  *See Stein v. Miss Franie's, Inc.*, 417 So. 2d 726, 726-27 (Fla. 1st DCA 1982) (reversing trial court's dismissal of claim for breach of guaranty of lease against individual signer where language of the instrument was ambiguous, and thus, parol evidence was admissible to explain the ambiguity); *see also Puckett v. Codisco, Inc.*, 440 So. 2d 596, 599 (Fla. 2d DCA 1983) ("Where it is uncertain whether an instrumental intended to bind a signator in an individual capacity, parol evidence is admissible to

15

explain the ambiguity"); *Skula v. Louselle*, 09-CIV-60096, D.E. 21 (S.D. Fla. April 8, 2009) (denying defendant's motion to dismiss claim for breach of note in his personal capacity based on existence of an issue of material fact).

In the pending matter, Plaintiff has alleged sufficient facts that, if believed, could establish Defendant Falcone as an individual guarantor on the Guarantee. More specifically, paragraphs 18 through 20 of the Second Amended Complaint claim that Defendant Falcone "conferred" with Plaintiff's agent, and during these discussions, Defendant Falcone "assured" Plaintiff's agent that he would "personally guarantee the loan." D.E. 29 at ¶¶ 18-19. As a result, the Second Amended Complaint continues, Plaintiff made the subject loan in this case. *Id.* at ¶ 20. If these allegations are taken as true and viewed in a light most favorable to Plaintiff, as this Court must consider them on a motion to dismiss, they provide the requisite averments to enable a fact-finder to construe the otherwise ambiguous language in the Guarantee as binding Defendant Falcone individually to serve as a guarantor on the Guarantee. Consequently, the Motion to Dismiss as it relates to Count II should be denied.

Defendant's reliance on *Nishimatsu Construction Co., Ltd. v. Houston National Bank*, 515 F.2d 1200, 1207 (5th Cir. 1975), does not change the outcome. In *Nishimatsu*, the court found an agent not personally liable on a credit application and agreement that he signed, where no language in the instrument indicated the parties intended to be bound, the instrument used boilerplate and neutral language, and the agent's signature was preceded by the word "by" to indicate a presumption of his representative capacity pursuant to Texas state agency law. In holding that the instrument indicated that the  agent was not personally liable, the former Fifth Circuit also found that pursuant to Texas law, the instrument was unambiguous on its face.

16

The *Nishimatsu* case is readily distinguishable from the facts before the Court.  As stated above, the language of the Guarantee has reflects some intention of the parties that more than one party serve as a guarantor, and, unlike the instrument at issue in *Nishimatsu*, the Guarantee here is neither boilerplate nor neutral.  Furthermore, even if Defendant's claim were subject to Texas agency law, which, clearly, it is not, here, Defendant Falcone's signature was not preceded by the word "by," and, thus, the presumption of his signing in representative capacity would not apply, and may not apply under Florida law.  Finally, unlike in *Nishimatsu*, the Guarantee is ambiguous as to the intent of the parties under Florida state law.

Considering all of these factors together, the Court finds that the face of the Guarantee is ambiguous as to whether the parties intended to hold Defendant Falcone liable in his individual capacity.  Viewed in the light most favorable to Plaintiff, therefore, Plaintiff has pled sufficient facts to claim breach of guarantee against Defendant Falcone.  Consequently, I respectfully recommend that Defendant's Motion to Dismiss Count II for Breach of the Guarantee be denied.

### Alternative Counts III, IV, and V

Defendant also moves to dismiss Plaintiff's alternative Counts III, IV, and V.  Under the Federal Rules of Civil Procedure, a plaintiff may plead alternative theories of recovery.  Indeed, Rule 8(e)(2), Fed. R. Civ. P., allows federal litigants to pursue alternative theories of recovery, regardless of their consistency.  *Allstate Ins. Co. v. James,* 779 F.2d 1536, 1540 (11th Cir. 1986).  "A party may not, however, *recover* separately on inconsistent theories when one theory precludes the other or is mutually exclusive of the other." *Brookhaven Landscape & Grading Co., Inc. v. J.F. Barton Contracting Co.,* 676 F.2d 516, 523 (11th Cir. 1982) (emphasis added).  Accordingly, to the extent that Defendant Falcone objects generally to Plaintiff's reliance on alternative claims, the Court finds

17

that Counts III, IV, and V are permissible pleadings in the alternative, as explained further below.

## Count III - Fraud in Inducement

Defendant Falcone also argues that Count III for fraud in the inducement should be dismissed against him because it is barred by the economic loss rule.  D.E. 31, 33, 32 at 6-8.  According to Defendant, while the Guarantee unambiguously provides for Defendant Funding to serve as the only guarantor, Count III attempts to circumvent the Guarantee by averring that Falcone orally represented that he would personally guarantee the money owed under the Note.  *Id.*

In his Motion, Defendant Falcone asserts that under the economic loss rule, Plaintiff cannot recover on a theory of fraud for alleged oral representations where those representations are adequately covered or expressly contradicted in a later written contract – here, the Guarantee.  *Id.* (citing *Topp, Inc. Uniden America Corp.*, 513 F. Supp. 2d 1345, 1348, (S.D. Fla. 2007); *Mac-Gray Servs., Inc. v. DeGeorge*, 913 So. 2d 630, 634 (Fla. 4th DCA 2005); *see also Rosa v. Amoco Oil Co.*, 262 F. Supp. 2d 1364, 1367 (S.D. Fla 2003)).  Defendant Falcone contends that his alleged oral representations are interwoven and indistinct from the written Guarantee and adequately addressed by its terms.  *Id.*  Because, under the alternative theory pled in Count III, no ambiguity exists regarding the identity of the guarantor in the Guarantee (*i.e.*, Defendant Funding is the sole guarantor), Defendant Falcone argues that the express terms of the Guarantee negate any prior oral representations by Falcone with respect to personally guaranteeing the loan.  As a result, Defendant contends, the allegations of fraud in the inducement are not independent of the Guarantee and cannot support a separate claim.  *Id.*  Accordingly, Defendant Falcone asks the Court to dismiss Count III with prejudice for failure to state a claim.  *Id.*

This Court does not agree.  Under Florida law, "[t]he economic loss rule is a judicially

created doctrine that sets forth the circumstances under which a tort action is prohibited if the only damages suffered are economic losses." *Indemnity Ins. Co. of North Am. v. American Aviation, Inc.,* 891 So. 2d 532, 536 (Fla. 2004).  The economic loss rule applies "when the parties are in contractual privity and one party seeks to recover damages in tort." *Id.* at 536.  "The prohibition against tort actions to recover solely economic damages for those in contractual privity is designed to prevent parties to a contract from circumventing the allocation of losses set forth in the contract by bringing an action for economic loss in tort." *Id.* (citing *Ginsberg v. Lennar Fla. Holdings, Inc.,* 645 So.2d 490, 494 (Fla. 3d DCA 1994)).

Florida law allows for a recovery of economic damages in an action involving a contract, however, when the claim involves a tort committed independently of the breach of contract. *Indemnity Ins. Co. of North America,* 891 So. 2d at 537.  In *HTP, Ltd. v. Lineas Aereas Costarriceneses,* 685 So.2d 1238, 1239 (Fla. 1996), the Florida Supreme Court stated,

> The economic loss rule has not eliminated causes of action based upon torts independent of the contractual breach even though there exists a breach of contract action. Where a contract exists, a tort action will lie for either intentional or negligent acts considered to be independent from the acts that breached the contract.

*Id.* at 1239.  As a result, where a tort claim such as for fraud in the inducement is independent of the breach of contract claim, the economic loss rule does not bar the claim.

But, a plaintiff cannot avoid the economic loss rule by labeling what is essentially a contract claim as a claim for fraud or fraud in the inducement.  *Topp, Inc. v. Uniden Am. Corp.*, 513 F. Supp 2d 1345, 1348 (S.D. Fla. 2007) (citing to *Hotels of Key Largo v. RIH Hotels, Inc.*, 694 So. 2d 74, 77 (Fla. 3d DCA 1997); *Behrman v. Allstate Ins. Co.,* 388 F. Supp. 2d 1346, 1349, *aff'd,* 178 F. App'x 862 (11th Cir.2006)).  "Misrepresentations relating to the breaching party's performance

19

under a contract do not give rise to an independent cause of action because such misrepresentations are interwoven and indistinct from the heart of the contractual agreement." *Id.* at 1348-49 (citing to *Hotels of Key Largo*, 694 So.2d at 78; *see also Premix-Marbletite Mfg. Corp. v. SKW Chem., Inc.*, 145 F. Supp. 2d 1348 (S.D. Fla.2001) (barring fraudulent inducement claim where misrepresentations constituting fraud went "directly to the heart of the parties' contractual relationship"). "A party may not recover in fraud for an alleged oral misrepresentation which is adequately dealt with in a later written contract." *Topp, Inc.*, 513 F. Supp. 2d at 1348 (citing *Englezios v. Batmasian*, 593 So. 2d 1077, 1078 (Fla. 4th DCA 1992)); *Allen v. Stephan Co.*, 784 So. 2d 456, 458 (Fla. 4th DCA 2000) (economic loss rule bars recovery where "the injury was one which flowed from the failure to perform the heart of the [written] agreement") (internal cites omitted)).

In short, "[a] party cannot recover in fraud for alleged oral misrepresentations that are adequately covered or expressly contradicted in a later written contract." *Mac-Gray Servs., Inc.*, 913 so. 2d at 634. Rather, in order for the tort of fraudulent inducement to withstand a motion to dismiss under the economic loss rule, the claim must involve a matter extraneous to the contract itself. *Topp, Inc.*, 513 F. Supp. 2d at 1348 (citing *Medalie v. FSC Sec.*, 87 F. Supp. 2d 1295, 1305 (S.D. Fla. 2000)).

In *Mac-Gray Servs., Inc.*, for example, the plaintiffs entered into a contract with the defendant for the purchase of laundry equipment. Prior to entering into the contract, the defendant's agent allegedly guaranteed the plaintiffs that they would make a certain amount of money running a laundromat and provided the plaintiffs with an estimated profit and loss schedule reflecting that the plaintiffs would earn a substantial profit their first year in business. The contract that the parties ultimately signed, however, stated, "Purchaser acknowledges that Seller, specifically neither

guarantees any income nor profits from the use of the equipment" and "Purchaser represents to Seller that Purchaser is not relying on Seller's expertise nor on any representations or guarantees of any kind in order to utilize the goods and/or services sold hereunder to begin or continue any business activity." When the business did not turn a profit, the plaintiffs sued the defendant, alleging, among other causes of action, that the statements of the defendant's representative prior to the signing of the contract fraudulently induced the plaintiffs to enter into the contract with the defendant, as the plaintiffs had relied upon the defendant's allegedly material misrepresentations in deciding to sign the contract. The Fourth District Court of Appeal concluded that the economic loss rule barred recovery because the contract, which followed the alleged statements by the defendant's agent, expressly contradicted the plaintiffs' assertions that they had relied on the statements of the agent in deciding to sign the contract. *Id.*

Other courts in Florida have characterized the test for determining whether the economic loss rule bars recovery under a tort theory as follows: "To determine whether the economic loss rule bars recovery under fraud, the question is simply this: is the fraud alleged in an act of performance or in a term of the bargain? Where . . . the representation is simply made and relied upon in inducing the completion of the transaction, then clearly it is a term of the bargain[,]" and the economic loss rule does not bar recovery. *Allen v. Stephan Co.*, 784 So. 2d at 458; *see also Topp, Inc.*, 513 F. Supp. 2d at 1349-50 (citing to *Allen*, 784 So. 2d at 458).

However the test may be articulated, Count III of the Second Amended Complaint survives consideration of the economic loss rule. To explain why, the Court compares the substance of the claim for fraudulent inducement with the content of the Guarantee. Under the Second Amended Complaint, Plaintiff claims that Defendant Falcone engaged in fraud in the inducement to the extent

that Defendant Falcone allegedly orally represented to Plaintiff that Defendant Falcone would personally guarantee the Loan, an alleged promise on which Plaintiff asserts he relied in subsequently making the Loan. *See* D.E. 29 at ¶¶ 38-42. Thus, under Plaintiff's fraud-in-the-inducement claim, the alleged oral guarantee by Defendant Falcone was separate from and in addition to the Guarantee that ostensibly bound Defendant Funding.

Nothing in the language of the Guarantee conflicts with this theory. To the contrary, the Guarantee states, "The rights, power and remedies granted to the Lender herein shall be cumulative and *in addition to any rights, powers and remedies to which Lender may be entitled either by operation of law* or pursuant to the Note . . . ." *See* D.E. 29-3 at 3 (emphasis added). Moreover, the Guarantee continues, "This Guarantee shall be a continuing guarantee, and *any other guarantor*, *and any other party liable upon* or in respect of any obligation hereby guaranteed may be released without affecting the liability of the Guarantors individually or collectively. The liability of each Guarantor hereunder shall be joint or several with the liability of any other guarantor or party . . . ." *Id.* (emphasis added).

This language is consistent with the idea that a guarantor other than Defendant Funding, who was allegedly bound by the Guarantee, could exist. As a result, unlike in *Mac-Gray Servs., Inc.*, where the contractual language made precisely the opposite promise of that allegedly represented by defendant prior to entering into the contract, the Court cannot find that the Guarantee in the instant matter "adequately cover[s] or expressly contradict[s]" the oral representations that the Complaint alleges Defendant Falcone individually made. *See Mac-Gray Servs., Inc.*, 913 So. 2d 634. Had the Guarantee eliminated the possibility of another guarantor, Defendant Falcone's position would have merit under *Mac-Gray Servs., Inc.*, and similar cases, because the language of

the Guarantee would then conflict with the promise that the Second Amended Complaint alleges that Defendant Falcone made to guarantee the Loan personally.   A plain reading of the Guarantee, however, establishes that the document does not do that.   Consequently, the Guarantee does not speak to the oral promises allegedly made by Defendant Falcone, and the economic loss rule does not bar the fraud-in-the-inducement claim.

The same result occurs under application of the *Allen* formulation of the economic loss rule framework.   As alleged in the alternative theory asserted in Count III, neither a personal guarantee by Defendant Falcone nor an agreement that Defendant Falcone would not provide a personal guarantee comprised a part of the bargain embodied in the Guarantee.   *See* D.E. 29 at ¶ 39; *see also* D.E. 29-3.   Rather, according to Count III, Defendant Falcone's alleged oral representation that he would guarantee the Loan caused Plaintiff ultimately to make the Loan.   *See* D.E. 29 at ¶¶ 38-42.   Thus, applying *Allen*, the alleged misrepresentation constituted a term of the bargain, not an act of performance under the contract.   Consequently, the economic loss rule does not bar a cause of action for fraud in the inducement under these facts.

As the economic loss rule does not bar recovery, the Court considers whether the allegations in the Second Amended Complaint adequately assert facts that, if proven true, could establish a claim for fraud in the inducement.   Towards this end, the Court notes that the essential elements of a claim for fraud in the inducement include the following: (1) a false statement of material fact occurred; (2) the maker knew of should have known of the falsity of the statement; (3) the maker intended that the false statement induce another's reliance; (4) the other party justifiably relied on the false statement to its detriment.   *See Equity Lifestyle Properties, Inc. v. Fla. Moving and Landscape Serv., Inc.*, 536 F.3d  1232, 1239 n.13 (11th Cir. 2009) (citing *Simon v. Celebration Co..*

23

883 So. 2d 826, 832 (Fla. 5th DCA 2004)); *see also  Hillcrest Pacific Corp v. Yamaura*, 727 So. 2d 1053, 1055 (Fla. 4th DCA 1999).

Here, the Second Amended Complaint sufficiently alleges facts that, if believed, establish each of the elements of fraud in the inducement.  First, paragraph 38 asserts that Defendant Falcone made a false statement that he would personally guarantee the Loan, and paragraph 42 claims that "but for" this allegedly false statement, Plaintiff would not have made the Loan in question.  *See* D.E. 29.  These allegations adequately allege that a false statement of material fact occurred.

Second, paragraph 39 specifically alleges that Defendant Falcone knew at the time of making the statement to Plaintiff that the statement was false, and that he would avoid and deny the personal guarantee of the money owed under the Note.  *See* D.E. 29.  These assertions satisfy the second element of fraud in the inducement – that the maker of the statement knew or should have known of the falsity of the statement.

Third, paragraph 39 similarly avers that Defendant Falcone intended through the statement to induce Plaintiff to provide the loan.  *See* D.E. 29.  Thus, the Second Amended Complaint sufficiently alleges the third element of fraud in the inducement.

Finally, paragraphs 41 and 42 of the Second Amended Complaint claim that in deciding to make the Loan, Plaintiff's representative relied upon Defendant Falcone's allegedly false statement that he would guarantee the Loan.  D.E. 29.  Paragraph 19 similarly asserts that Defendant Falcone assured Plaintiff's representative that Defendant Falcone would personally guarantee the Loan.  *Id.* The Second Amended Complaint and its attachments reflect that Defendant Falcone served as the signor of the Note and the Guarantee on behalf of the corporate entities, and further, that Defendant Falcone is a member of both Defendants Group (the Loan recipient) and Funding (the guarantor

under the Guarantee).  *See* D.E. 29 at ¶¶ 7, 10; D.E. 29-2; D.E. 29-3.  Thus, the Second Amended

Complaint alleges facts providing a basis for a fact-finder to conclude that Defendant Falcone had

some type of interest in Defendant Group's procurement of the Loan that might explain his alleged

willingness to guarantee the Loan personally and justify Plaintiff's reliance on Defendant Falcone's

alleged representation.  Moreover, nothing in the Second Amended Complaint or its attachments

provides any basis for the Court to find that Plaintiff should have known that he could not rely upon

Plaintiff Falcone's alleged promise to guarantee the Note personally.   Indeed, the Florida Supreme

Court has held that in a fraudulent inducement claim "a recipient may rely on the truth of a

representation even though its falsity could have been ascertained had he made an investigation,

unless he knows the representation to be false or its falsity is obvious to him."  *Besett v. Basnett*, 389

So. 2d 995, 997-98 (Fla. 1980).   In view of these facts, at the motion-to-dismiss stage, this Court

cannot say that, as a matter of law, Plaintiff's reliance on Defendant Falcone's alleged promise was

not justified, when this Court views the allegations contained in the Second Amended Complaint in

the light most favorable to Plaintiff.  Consequently, the Second Amended Complaint sufficiently

asserts all four elements of the cause of action of fraud in the inducement.  As a result, I respectfully

recommend that the Court deny Defendant Falcone's Motion to Dismiss Count III as alleged against

him.

### Count IV- Promissory Estoppel

According to Defendant Falcone's Motion, Count IV for promissory estoppel should also be

dismissed.  D.E. 31, 33, 32 at 8-10.  In *W.R. Grace and Co. v. Geodata Services Inc.,* 547 So. 2d 919

(Fla.1989), the Florida Supreme Court summarized the essential elements of promissory estoppel:

(1) the claim must be based on promises that are definite and substantial in nature; (2) the invoker

of the doctrine must show a justifiable reliance on the promises made; and (3) the invoker must demonstrate detrimental reliance on such promises. *Id.* at 924-25. Even where these conditions are met, however, a party may not rely upon promissory estoppel to hold the maker of the statements at issue liable for oral statements made prior to the written contract, where the contract covers the same subject matter. *See Advanced Market Systems Corp. v. ZK Yacht Sales*, 830 So.2d 924, 927 (Fla. 4th DCA 2002) (internal citation omitted).

Defendant Falcone relies on this last point to contend that Plaintiff's claim for promissory estoppel is deficient. *Id.* In this regard, Defendant asserts that the case at bar is similar to *Advanced Market Systems Corp. v. ZK Yacht Sales*, 830 So. 2d 924, 927 (Fla. 4th DCA 2002), where the court denied a claim for promissory estoppel where the prior oral agreements between the parties were covered by the later agreed-upon contract terms. *Id.* According to Defendant Falcone, as the oral agreement regarding Defendant Falcone's alleged personal guaranteeing of the Loan is covered by the Guarantee, this claim cannot stand and should be dismissed.

This Court does not agree. First, as with Count III, the Second Amended Complaint pleads Count IV in the alternative to Count II for breach of the guarantee. *See* D.E. 29 at ¶ 45. Second, for the reasons articulated above in the discussion of Count III, under the alternative scenario, the Guarantee neither covers nor precludes the possibility that Defendant Falcone made a personal guarantee of the Loan separate and apart from Defendant Funding's guarantee in the Guarantee. Third, because the Guarantee does not cover or preclude Defendant Falcone's separate personal guarantee, the reasoning of *Advanced Market Systems Corp.*, where the court denied promissory estoppel because the contract at issue pertained to the subject of the alleged promise, does not apply here.

26

Fourth, the Second Amended Complaint adequately asserts facts that, if believed, could establish all elements of the cause of action of promissory estoppel. In this respect, paragraph 46 alleges that Defendant Falcone "made a false statement to [First Jackson's agent] that [he] would personally guarantee the payment of money owed under the Note," and paragraph 49 follows up, asserting that "[a]s a direct result of [Defendant] Falcone's false and fraudulent statement, [Plaintiff] loaned $2,000,000. . . ." *See* D.E. 29. These allegations suffice to set forth facts that, if believed, would establish that the promise at issue was "definite and substantial."

As to the second element, the Second Amended Complaint states that Plaintiff's agent "reasonably relied" on Defendant Falcone's alleged oral personal guarantee. *See id.* at 48. This representation, along with the fact that, as noted in the discussion of Count III above, Defendant Falcone was a member of the recipient of the Loan and the signor of the Guarantee and could be viewed as having had an interest in Defendant Group's obtaining of the Loan sufficient to justify Plaintiff's reliance on Defendant Falcone's alleged promise, is enough to demonstrate the second element of promissory estoppel for purposes of a motion to dismiss. *See, e.g., W.R. Townsend Contracting, Inc. v. Jensen Civil Construction, Inc.*, 728 So. 2d 297, 302-03 (Fla. 1st DCA 1999). Indeed, the "question of whether [a plaintiff's] reliance was reasonable is a factual issue that cannot be resolved at the motion to dismiss stage." *Uphoff v. Wachovia Secs., LLC*, 2009 WL 5031345, *5 (S.D. Fla. Dec. 15, 2009) (citing *FCCI Ins. Co. v. Cayce's Excavation, Inc.*, 901 So. 2d 248, 251 (Fla. 2d DCA 2005); *Romo v. Amedex Ins. Co.*, 930 So. 2d 643, 652-53 (Fla. 3d DCA 2006); *Hetrick v. Ideal Image Development Corp.*, 2008 WL 5235131, *12 (M.D. Fla. Dec. 13, 2008)).

With regard to the third element, the Second Amended Complaint specifically avers that in reliance on Defendant Falcone's allegedly false statement, Plaintiff loaned $2 million to Defendant

Group and suffered the loss of both the principal and interest on that principal.  *See* D.E. 29 at ¶¶ 48-50.  These allegations satisfy the requirement that a plaintiff assert facts showing that it detrimentally relied on the alleged promise at issue.  Consequently, Count IV sufficiently alleges facts that, if believed, would establish each of the elements of the cause of action of promissory estoppel, and I therefore respectfully submit that the Motion to Dismiss as it regards Count IV against Defendant Falcone should be denied.

### Count V - Reformation of the Guarantee

Count V, another claim that the Second Amended Complaint asserts in the alternative should the Court find that the Guarantee as written does not bind Defendant Falcone to a personal guarantee, seeks reformation of the Guarantee to reflect "the true intention and agreement of the parties – that [Defendant] Falcone personally guarantees payment of the money owed under the Note."  *See* D.E. 29 at ¶¶ 52-59.  Defendant seeks to dismiss Count V on the grounds that the claim represents an attempt to enforce an alleged oral agreement between Plaintiff and Defendant Falcone, the duration of which is in excess of one year and is therefore prohibited by the Statute of Frauds.  D.E. 31, 33, 32 at 10-12.

Florida's Statute of Frauds, Fla. Stat. § 725.01 provides, in pertinent part,

> No action shall be brought whereby . . . to charge the defendant upon any special promise to answer for the debt, default or miscarriage of another person or to charge any person upon any agreement made . . . upon any agreement that is not to be performed within the space of 1 year from the making thereof, . . . unless the agreement or promise upon which such action shall be brought, or some note or memorandum thereof shall be in writing and signed by the party to be charged therewith or by some other person by her or him thereunto lawfully authorized.

Here, Defendant Falcone notes that the terms of the Note require monthly interest payments from

28

January 20, 2007, through December 18, 2008 – a period of more than one year.  *See* D.E. 31 at ¶¶

37-38.  Moreover, under the alternative scenario pled by Plaintiff, the Guarantee would not constitute

a "writing . . . signed by [Defendant Falcone or his lawfully authorized representative]," and the

Second Amended Complaint refers to no other "writing" memorializing Defendant Falcone's alleged

personal guarantee.  As a result, Defendant Falcone urges, reforming the Guarantee to reflect now

Defendant Falcone's personal guarantee in addition to the guarantee of Defendant Funding would

violate the Statute of Frauds because it would allow for an oral agreement requiring more than one

year to complete, that was not timely reduced to writing and signed by Defendant Falcone.

In considering Defendant Falcone's argument, the Court pauses to discuss the concept of

reformation.  Reformation is an equitable remedy.  *Smith v. Royal Automotive Group, Inc.*, 675 So.

2d 144, 150 (5th DCA 1996).  As the Supreme Court of Florida has described the doctrine,

> Where an agreement has been actually entered into, but the contract,
> deed, or other instrument in its written form does not express what
> was really intended by the parties thereto, equity has jurisdiction to
> reform the written instrument so as to conform to the intention,
> agreement, and understanding of all the parties.

*Jacobs v. Parodi*, 39 So. 833 (Fla. 1905) (citation omitted).  Courts will authorize reformation where

"a mistaken writing is the product of the parties' mutual mistake, or unilateral mistake on the part

of one party and inequitable conduct by the other . . . ."  *Smith*, 675 So. 2d at 150-51 (citing

*Providence Sq. Ass'n, Inc. v. Biancardi*, 507 So. 2d 1366, 1372 & n.3 (Fla. 1987); *Hopkins v. Mills*,

156 So. 532 (Fla. 1934); *Brown v. Brown*, 501 So. 2d 24, 26-27 (Fla. 5th DCA 1986), *rev. denied*,

511 So. 2d 297 (Fla. 1987); Fla. Jr. 2d, Cancellation, Reformation, and Rescission of Instruments

§ 65 (1979)).  "The question of whether or not the parties' negotiations produced a binding

agreement [that is not embodied in the signed document] is a question of intent, which in turn is a

question of fact." *Id.* at 152.

Applying these principles to the instant matter, the Court concludes that if the fact-finder finds that the Guarantee as written does not bind Defendant Falcone personally under Count II of the Second Amended Complaint, Plaintiff has adequately alleged facts that satisfy the elements of a claim for reformation. More specifically, the Second Amended Complaint asserts that (1) the parties agreed that Defendant Falcone would personally guarantee the Note [D.E. 29 at ¶ 54]; (2) to the extent that the Guarantee does not bind Defendant Falcone to guarantee the Note personally, it fails to reflect the true intentions of the parties [*id.* at ¶ 55]; (3) the failure of the Note to reflect the parties' true intentions resulted from a mutual mistake of fact or a unilateral mistake by Plaintiff and inequitable conduct by Defendant Falcone [*id.* at ¶ 56]; and (4) Plaintiff's agent reasonably relied on Defendant Falcone's alleged agreement to guarantee the Note personally and consequently loaned $2 million, resulting in a loss to Plaintiff [*id.* at ¶¶ 57-58]. If accepted by the fact-finder, these allegations would state a cause of action for reformation under Florida law.

That, however, does not address Falcone's objections to Count V. Although Plaintiff has pled sufficient facts to set forth all of the elements of reformation, Defendant Falcone, as noted above, contends that, as a matter of law, the claim for reformation must fail because the content of the alleged oral contract violated the Statute of Frauds, and, thus, cannot now be reduced to an enforceable writing.

Florida courts have rejected the idea that the Statute of Frauds precludes reformation of contracts to include agreements that are otherwise subject to the Statute of Frauds. *See Smith*, 675 So. 2d at 152-53 (citing *Grossman v. Levy's*, 81 So. 2d 752 (Fla. 1955); *Rice v. Ins. & Bonds, Inc.*, 366 So. 2d 85, 87 (Fla. 3d DCA), *cert. dismissed*, 372 So. 2d 469 (Fla. 1979); *Orange State Oil Co.*

*v. Crosby*, 36 So. 2d 273 (Fla. 1948), *overruled on other grounds, All Florida Sur. Co. v. Coker*, 88

So. 2d 508 (Fla. 1956); *Miley v. Miley*, 402 So. 2d 557, 558 (Fla. 2d DCA 1981); *Gennaro v. Leeper*,

313 So. 2d 70, 72 (Fla. 2d DCA 1975)).  In explaining why, the Supreme Court of Florida has

reasoned,

> Our statute of frauds, unlike the statutes of some states, does not
> declare an offending contract to be "void" or "invalid."  Nor does it
> merit this construction . . . .  It merely states, so far as is relevant here,
> that "*No action shall be brought* whereby . . . to change [sic] any
> person . . .upon any agreement that is not to be performed within the
> space of one year from the making thereof."  (Italics added.)  The
> statute thus pertains exclusively to the remedy. . . .

*Smith*, 675 So. 2d at 153 (quoting *Grossman*, 81 So. 2d at 753 (emphasis in original) and citing *Rice*

*v. Ins. & Bonds, Inc.*, 366 So. 2d 85, 87 (Fla. 3d DCA), *cert. dismissed*, 372 So. 2d 469 (Fla. 1979)).

Thus, "'[i]f reformation of a writing is otherwise appropriate, it is not precluded by the fact that the

contract is within the Statute of Frauds.'" *Id.* (quoting Restatement (Second) of Contracts §156).  In

fact, Florida courts have held that "there is never sufficient reason for refusing reformation before

it is determined whether the writing satisfies the Statute [of Frauds], since adequate safeguards can

be afforded [at the subsequent stage of determining whether the Statute of Frauds applies] through

a careful examination of the evidence." *Id.* (quoting Restatement (Second) of Contracts § 156

reporter's note (1981) (emphasis deleted)).

        In this case, Count V seeks reformation of the contract.  *See* D.E. 29 at 8-9.  Plaintiff does

not seek enforcement of any resulting reformed contract.  Had it done so, the Court could consider

whether the Statute of Frauds bars such a claim.  In the absence of a request for such relief, however,

under Florida law, the possibility that Florida's Statute of Frauds may ultimately preclude

enforcement of any reformed contract in this case cannot provide a basis for dismissing Plaintiff's

claim for reformation where the Second Amended Complaint has sufficiently set forth facts that, if believed, would establish all of the elements of the cause of action of reformation.[6]  As a result, I respectfully recommend that the Court deny Defendant Falcone's Motion to Dismiss as it relates to Count V of the Second Amended Complaint.

### III. Recommendation

In light of the foregoing, I respectfully **RECOMMEND** that Defendant Arthur Falcone's Motion to Dismiss Second Amended Complaint [D.E. 31, 32, 33] be **DENIED**.

The parties shall have fourteen (14) days from the date of being served with a copy of this Report and Recommendation within which to file written objections, if any, with the Honorable William J. Zloch, United States District Judge.  Failure to file objections timely shall bar the parties from a *de novo* determination by the District Judge of an issue covered in the report and shall bar the parties from attacking on appeal the factual findings accepted or adopted by the District Court except

---

[6]While merely seeking reformation without enforcement of any reformed contract may seem like an exercise in futility, if Plaintiff succeeds in the reformation claim, perhaps Defendant Falcone will choose to perform under the reformed contract.  Alternatively, Plaintiff might choose subsequently to seek enforcement of the reformed contract.  As noted above, should that occur, the Court could consider any Statute-of-Frauds challenge that Defendant Falcone might have to such a cause of action.  Now, however, such an objection is premature.

upon grounds of plain error or manifest injustice. *R.T.C. v. Hallmark Builders, Inc.*, 996 F.2d 1144, 1149 (11th Cir. 1993); *LoConte v. Dugger*, 847 F.2d 745 (11th Cir. 1988); *Nettles v. Wainwright*, 677 F.2d 404, 410 (5th Cir. Unit B 1982) (en banc); 28 U.S.C. § 636(b)(1).

**FILED AND SUBMITTED** at Fort Lauderdale, Florida, this 15th day of April, 2010.


ROBIN S. ROSENBAUM
United States Magistrate Judge


cc:     Honorable William J. Zloch
        Counsel of Record

33